Rodney Joe Lunceford was convicted of driving under the influence of alcohol. He raises two issues on this appeal from that conviction.
 I
The defendant argues that the results of a breath test for intoxication should not have been admitted into evidence because he was not driving on a "public highway."
The defendant was observed sitting in an automobile parked behind a drug store in a shopping center. This was a private parking lot and not a public highway.
The offense of driving under the influence (DUI) as defined by Alabama Code 1975, § 32-5A-191, applies "upon highways andelsewhere throughout the state." § 32-5A-2(2) (emphasis added). Unlike Alabama's predecessor offense of DWI codified as §32-5-70, Hilyer v. Dixon, 373 So.2d 1123, 1124
(Ala.Civ.App.), cert. denied, Ex parte Dixon, 373 So.2d 1125 (Ala. 1979), the present offense of DUI may be committed on private property. See generally, Annot., 29 A.L.R.2d 938 (1970); 7A Am.Jur.2d Automobiles and Highway Traffic § 301 (1980).
The admission into evidence of the results of chemical tests to determine blood-alcohol content is authorized by §32-5A-194. That section is not limited to acts committed upon public highways. Subsection (a) of that section provides:
 "Upon the trial of any civil, criminal or quasi-criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual control of a vehicle while under the influence of alcohol or controlled substance, evidence of the amount of alcohol or controlled substance in a person's blood at the alleged time, as determined by a chemical analysis of the person's blood, urine, breath or other bodily substance, shall be admissible." § 32-5A-194(a).
Alabama's "implied consent statute" is contained in §32-5-192 and is a part of the Alabama Chemical Test For Intoxication Act. See § 32-5-190 et seq. The implied consent statute is limited to public highways. *Page 248 
 "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor." § 32-5-192(a) (emphasis added).
The defendant was charged with DUI in violation of a municipal ordinance of the City of Northport. In § 15-51 of theNorthport City Code, the city adopts the infrared absorption intoxilyzer as the test to be administered "to determine the alcoholic content of the blood of any person lawfully arrested . . . while the person was driving . . . on the publichighways." (Emphasis added.)
This case was tried before a circuit judge sitting without a jury. The arresting officer testified that she told the defendant that she "was going to take him to Metro for a breath test, that [she] felt like he had too much to drink and [she] asked him if he was willing to take a breath test and he said yes." The trial judge admitted the test results into evidence because the defendant consented to take the test: "[T]he Court is of the opinion that the test is admissible on the basis of it being a consensual test. * * * [T]he implied consent statute is inapplicable to this case."
Section 32-5A-194 authorizes the admission into evidence of the results of a chemical test to determine blood-alcohol content. However, before those results can be admitted into evidence, a proper predicate must be laid.
 "This predicate may be established by showing, first, that the law enforcement agency has adopted the particular form of testing that was in fact used. Alabama Code 1975, § 32-5A-192(a).[1] See Estes v. State, 358 So.2d 1050 (Ala.Crim.App.), cert. denied, 358 So.2d 1057 (Ala. 1978). Second, there must be a showing that the test was performed according to methods approved by the State Board of Health. Alabama Code 1975, § 32-5A-194(a)(1). See Commander v. State, 374 So.2d 910 (Ala.Crim.App. 1978). This may be proved by the introduction of the rules and regulations the officer followed while administering the test and the officer's testimony that he did, in fact, follow those rules when he administered the test in question. Parker v. State, 397 So.2d 199 (Ala.Crim.App. 1981), Patton v. City of Decatur, 337 So.2d 321 (Ala. 1976). Third, there must be a showing that the person administering the test has a valid permit issued by the State Board of Health for that purpose. Alabama Code 1975, § 32-5A-194(a)(1)." Ex parte Bush, 474 So.2d 168, 170 (Ala. 1985).
The trial judge correctly concluded that the implied consent statute did not apply to this case. "[D]riving upon the public highways is a necessary predicate for application of the implied consent statute. . . ." People v. Kissel, 150 Ill. App.3d 283, 103 Ill.Dec. 646, 647, 501 N.E.2d 963, 964 (1986). "[T]he implied consent statute requires a nexus between driving upon a public highway at the time of or shortly before his arrest and being subjected to the requirements of the statute at the request of an officer." Kissel, 150 Ill. App. 3d at 285, 103 Ill.Dec. at 647, 501 N.E.2d at 964; People v. Foster,170 Ill. App.3d 306, 120 Ill.Dec. 651, 654, 524 N.E.2d 681, 684
(1988).
 "The legislature has determined that only those who drive or are in actual control of a vehicle 'upon the public highways' of the State shall be deemed to have consented to chemical testing. As it is undisputed in the present cases that defendants were observed driving their vehicles only upon privately-owned parking lots we conclude they were not subject to the provisions of the implied consent statute. *Page 249 
 "We do not consider, as suggested by the State in its brief, that our holding would necessarily exempt all drivers who may be finally stopped and arrested on private property from the requirements of the implied consent statute. Where there is evidence that a person drove or was in control of a vehicle upon a public highway while under the influence of alcohol or other drug, as required by the statute, he will be deemed to have consented to testing under the statute whether actually arrested on the highway or on private property." Kissel, 150 Ill. App. 3d at 286-87, 103 Ill.Dec. at 648, 501 N.E.2d at 965.
The implied consent statute is applicable where the arresting officer has probable cause to believe that the defendant had been driving on a highway even though he did not actually see the defendant drive on the highway. People v. Wingren, 167 Ill. App.3d 313, 118 Ill.Dec. 62, 68, 521 N.E.2d 130, 136 (1988).
Ex parte Love, 513 So.2d 24 (Ala. 1987), stands for the principle that a blood sample taken before a motorist's arrest and without his express consent is inadmissible under the express terms of the implied consent statute. "[T]he requirement of a lawful arrest in the Alabama 'implied consent' statute grants to the motorist in question a procedural right, and . . . the failure to accord that right renders the blood sample illegal for the purpose of its admission as evidence against the motorist who objects to its admission." Love, 513 So.2d at 30. The court found that "the Alabama statute gives a procedural protection beyond that apparently mandated by federal decisions." Love, 513 So.2d at 30.
However, here, the implied consent law does not apply because the defendant was arrested for DUI on private property and there was no evidence that he had been driving on a highway.[2] "Note that it is the act of operating a vehicle on the public highways that brings the statute into operation.""Interpretation of Implied Consent Laws by the Courts," Traffic Institute, Northwestern University, at 21 (1972). The implied consent statute has been limited in its application by the legislature to persons who operate a motor vehicle upon the public highways of this state. § 32-5-192(a). Consequently, the procedural protections afforded by the Alabama implied consent statute do not apply to a motorist arrested for DUI on private property and, in such a case, the taking of a breath sample can be justified on the basis of voluntary consent. Cf. Ex parteLove, 513 So.2d at 29 ("[I]n the absence of our statute's limiting language, we could justify the taking of the blood sample on the basis of a lawful arrest without a warrant, the basis of a lawful arrest with a warrant, or the basis of voluntary consent or other waiver.").
Here, the defendant was lawfully arrested for DUI before the chemical test for intoxication was requested or performed. The due process protections of Schmerber v. California,384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), were satisfied. Had the defendant refused to submit to the test, his license could not have been revoked under the implied consent law.
In People v. Kissel, supra, the appellate court held that a trial court erred in suppressing the results of a breathalyzer test after determining that the implied consent statute was inapplicable because the defendants only operated their vehicles on private property. The appellate court remanded the cause to the trial court for a determination of the voluntariness of the consent to take the test.
 "The State also contends that even should it be determined that the implied consent statute was inapplicable at the time of the arrests of defendants Charles Kissel and James Slezak that the trial court erred in suppressing the results of Kissel's breathalyzer test and the statements made by Slezak in refusing to submit to testing when requested by the *Page 250 
officer to do so. The State argues that the court should have held an evidentiary hearing as to the voluntariness of Kissel's consent to take the test and Siezak's statements.
 "We agree. It is apparent the trial court considered only whether the implied consent statute was applicable and, after determining it was not, suppressed the evidence of the results of Kissel's breathalyzer test and Slezak's statements on that basis without considering evidence directed to the issue of the voluntariness of the consent or the statements. The record provided relating to the arguments of counsel as to these matters is not sufficient to permit us to resolve those issues." Kissel, 150 Ill. App. 3d at 287, 103 Ill.Dec. at 648, 501 N.E.2d at 965.
In this case, like that in Kissel, the record does not contain sufficient information for this Court to determine the issue of the voluntariness of the defendant's consent to the test.
Here, because the evidence shows only that the defendant was driving on private property, his consent to any chemical test cannot be implied. "To introduce the evidence obtained in a consent search, the prosecution must establish that consent was [freely] and voluntarily given. Bumper v. North Carolina,391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968). Under the Fourth Amendment, courts must examine the totality of the circumstances to determine the voluntariness of the consent.United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870,64 L.Ed.2d 497 (1980)." Hubbard v. State, 500 So.2d 1204, 1221
(Ala.Cr.App.), affirmed, Ex parte Hubbard, 500 So.2d 1231 (Ala. 1986), cert. denied, Hubbard v. Alabama, 480 U.S. 940,107 S.Ct. 1591, 94 L.Ed.2d 780 (1987). "Consent to an otherwise illegal search must be clearly, unequivocally and convincingly proven." Lietz v. State, 291 Ala. 133, 135, 279 So.2d 116
(1973). "This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." Bumper v.North Carolina, 391 U.S. 543, 548-49, 88 S.Ct. 1788, 1792,20 L.Ed.2d 797 (1968); White v. State, 495 So.2d 718, 720-21
(Ala.Cr.App. 1986). This last principle is especially significant in this case because of the arresting officer's testimony that she "told [the defendant] I was going to take him to Metro for a breath test, . . . [a]nd I asked him if he was willing to take a breath test . . ."
This cause is remanded to the circuit court to allow that court to conduct an evidentiary hearing to determine the voluntariness of the defendant's consent to the chemical test for intoxication. If the trial court finds that the defendant's consent was voluntary, it is directed to prepare a written order containing findings of fact and forward that order, along with a transcript of the hearing, to this Court. If the trial court finds that the defendant's consent was involuntary, it shall grant the defendant a new trial, or such other relief as justice requires, and notify this Court of its action.
 II
The complaint charged the defendant with "driving . . . upon a highway." The defendant contends that the evidence is insufficient to support his conviction because that evidence only shows that he was driving in a private parking lot.
The words in the complaint "on a public highway" describe the place where the alleged crime occurred and are surplusage. "It is not necessary to allege in a complaint, or indictment, where the offense was committed. This is a matter of proof, and upon the trial of a cause it must be proved that the offense complained of was committed within the jurisdiction of the court where the case is being tried." Hammonds v. City ofTuscaloosa, 21 Ala. App. 286, 287, 107 So. 786 (1926). "It is not necessary to allege where the offense was committed in an indictment." § 15-8-31, Code of Alabama 1975. "It is not necessary to state . . . the place where the offense is alleged to have been committed. Unnecessary allegations may be disregarded as surplusage, and on motion of the defendant shall be stricken by the court if prejudicial or unduly prolix." Rule 15.2(d), A.R.Cr.P.Temp. *Page 251 
Even though the allegation of where the accused drove his vehicle constitutes unnecessary surplusage, there is authority that since it was alleged it must be proven. In Sexton v.State, 29 Ala. App. 336, 339, 196 So. 742, cert. denied,239 Ala. 662, 196 So. 746 (1940), the appellate court reversed on another ground but noted "in passing":
 "We might add, in passing, that, while the complaint upon which appellant was tried . . . carried the unnecessary allegation that the highway upon which appellant drove a motor vehicle 'while under the influence of liquor' was a public highway (Gen. and Local Acts Ala. Extra Session 1936-1937, p. 229), yet, the State having seen fit to allege that it was a public highway, should have been required — in order to secure a conviction of appellant — to prove it. Gilmore v. State, 99 Ala. 154, 13 So. 536."
We do not consider Sexton dispositive of the issue now presented for two reasons. First, the observation in Sexton was dictum because it was not necessary to the decision in that case and is therefore not controlling as precedent. Roquemorev. Sovereign Camp, W.O.W., 226 Ala. 279, 282, 146 So. 619
(1933). Second, there is an apparent conflict in the case law of this state on the necessity of proving surplusage. There is authority that unnecessary allegations need not be proven. SeeBrown v. State, 30 Ala. App. 339, 343, 7 So.2d 24 (1941), cert. denied, 242 Ala. 485, 7 So.2d 28 (1942) ("The rule in our State is that an allegation in an indictment which is but mere surplusage may be disregarded — it is immaterial for any purpose. The exception to this rule . . . is that if the allegation (constituting surplusage) 'is descriptive of the fact or degree of the crime, or is material to the jurisdiction' it must be proved as alleged."); Cauley v. State,14 Ala. App. 133, 135, 72 So. 271 (1916) ("The statute makes the stealing of a cow, regardless of the value of the cow, grand larceny . . ., and in such case it is not necessary to allege or prove value. . . . Therefore the allegation 'of the value of thirty-five dollars,' not being descriptive of the offense, was properly regarded as surplusage, and proof thereof was not necessary.").
There is also authority that even unnecessary allegations must be proven. Weatherly v. State, 33 Ala. App. 127, 131,30 So.2d 484 (1947) ("[T]he law is, as has been universally held, if an indictment contains an unnecessary averment, yet being alleged, it becomes necessary for the State to prove it, and there could be no conviction without such proof. Gilmore v.State, 99 Ala. 154, 13 So. 536, 537."); Hayes v. State,33 Ala. App. 178, 181, 31 So.2d 306 (1947) ("It has been definitely settled that even an unnecessary allegation, but which is descriptive of the identity of that which is legally essential to the charge, . . . must be proven as laid."). See alsoJohnson v. State, 35 Ala. 363, 366 (1860), and cases cited therein.
"However, our Alabama case law is clear that there must be amaterial variance between indictment and proof before a conviction will be overturned for that reason." Ex parteCollins, 385 So.2d 1005, 1009 (Ala. 1980) (emphasis in original) (no material variance between indictment charging theft of heat pump with a certain serial number and proof showing that serial number had been removed and could not be ascertained). In Collins, supra, our Supreme Court reversed the judgment of this Court in Collins v. State, 385 So.2d 993, 998
(Ala.Cr.App. 1979), where we relied on the principle that "if an indictment contains an unnecessary averment, nonetheless it becomes necessary for the state to prove it. . . ."
More recently, our Supreme Court held that there was no material variance in an indictment charging a capital murder for hire between an allegation that the accused co-signed a promissory note with the actual killer at the Citizen's Bank of Winfield and proof that the note was signed at the Winfield State Bank.
 "Likewise, in the instant case, the fact that Lundy had business transactions at both banks does not mean that the bank's identity is material; thus, proof that the subject note was signed at a bank different from the bank identified *Page 252 
in the indictment does not constitute a material variance. The gravamen, or substance, of the charged offense is that Lundy and Goodson entered into a contract whereby, in consideration of Goodson's agreement to kill Lundy's wife, Lundy agreed to co-sign Goodson's bank note as surety. While the requisite elements of proof under this indictment include the existence of a contract for hire to kill, the identity of the institution with which the financial arrangement was made is not one of those elements.
 "Compliance with the due process mandate of notice does not require that the defendant be furnished the name of the bank where he co-signed the note. Thus, the inclusion of the name of the bank within the language of the indictment is surplusage. Because the identification of the bank was not a material allegation, proof of the correct name of the bank did not constitute a material variance." Lundy v. State, 539 So.2d 322
(Ala. 1988).
Applying similar considerations to this case leads this Court to the conclusion that there was no material variance between the complaint charging DUI on a public highway and proof showing DUI on private property. The gravamen, or substance, of the charged offense is that the defendant was driving while intoxicated. While the requisite elements of proof under this complaint include proof that the defendant was driving a motor vehicle, the location of that driving is not one of those elements. "Under the terms of this [DUI] statute, enacted by the Legislature in the exercise of the police power, the place of operation is not made an element of the offense."O'Reilly v. State, 235 Ala. 328, 329, 179 So. 263 (1938).
As indicated above, the inclusion of the location of the driving within the language of the indictment is surplusage. Because the identification of that location was not a material allegation, proof of the correct location of the driving did not constitute a material variance. House v. State,380 So.2d 940 (Ala. 1979) (no material variance in regard to capacity in which assault victim was employed, where indictment alleged deputy sheriff and proof showed jailer).
As directed in Part I of this opinion, this cause is remanded to the circuit court for further proceedings.
REMANDED WITH DIRECTIONS.
All Judges concur.
[1] This reference to § 32-5A-192(a) is an error. That section is entitled "homicide by vehicle." The correct statutory reference is § 32-5-192(a).
[2] "'The term "highway" is the generic term for all kinds of public ways * * *, and the phrase "public highway" is a tautological expression, since all highways are necessarily public.'" Sexton v. State, 239 Ala. 662, 663, 196 So. 746
(1940). See statutory definition of "highway" at §32-1-1.1(23).