On June 18, 2003, Alvin Bernard Brown was charged with two counts of driving under the influence of alcohol ("DUI"), violations of §§ 32-5A-191(a)(2) and 32-5A-191(a)(1), Ala. Code 1975. On October 21, 2003, Brown moved to suppress the results of his blood alcohol test on the ground that there was no evidence indicating that Brown, after having consumed alcohol, had been on a public roadway; after hearing testimony and argument, the trial court denied the motion. (R. 19.) *Page 1275 
Also on October 21, 2003, Brown pleaded guilty to felony DUI with three prior DUI offenses, a violation of § 32-5A-191(a)(1) and (h), Ala. Code 1975. On December 22, 2003, the trial court sentenced him to three years in prison, but suspended the sentence and ordered him to serve six months followed by one year of work release, with the remainder of the sentence suspended; the trial court also fined Brown $4,100 and ordered that his driver's license be revoked for 5 years. This appeal followed.
On appeal, Brown argues, as he did at trial before pleading guilty, that the results of the blood alcohol test were inadmissible against him under the implied consent statute because he was on private property and allegedly there was no evidence indicating that he had driven, intoxicated, on public roadways. Because the circumstances of his arrest do not fall under the implied consent statute, § 32-5-192(a), Ala. Code 1975, he argues, and because he did not expressly consent to his blood being tested, the blood test was involuntary and, therefore, inadmissible.
The statute in question provides:
 "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given his consent, subject to the provisions of this division, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle on the public highways of this state while under the influence of intoxicating liquor. The test or tests shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving a motor vehicle upon the public highways of this state while under the influence of intoxicating liquor. The law enforcement agency by which such officer is employed shall designate which of the aforesaid tests shall be administered. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 90 days; provided if such person objects to a blood test, the law enforcement agency shall designate that one of the other aforesaid tests be administered."
§ 32-5-192(a), Ala. Code 1975.
We have addressed the issue raised by Brown before inLunceford v. City of Northport, 555 So.2d 246 (Ala.Crim.App. 1988), and in Barnett v. State, 671 So.2d 135 (Ala.Crim.App. 1995). In Lunceford, the appellant was found in a parked car in a private parking lot. The Court held that the evidence showed only that the appellant had been driving on private property; it remanded the cause for the trial court to determine the voluntariness of the appellant's blood test, in light of the fact that the evidence did not implicate the implied consent statute. The Court reasoned:
 "`[D]riving upon the public highways is a necessary predicate for application of the implied consent statute. . . .' People v. Kissel, 150 Ill.App.3d 283, 103 Ill.Dec. 646, 647, 501 N.E.2d 963, 964 (1986). `[T]he implied consent statute requires a nexus between driving upon a public highway at the time of or shortly before his arrest and being subjected to the requirements of the statute at the request of an officer.' Kissel, 150 Ill.App.3d at 285, 103 Ill.Dec. at 647, 501 N.E.2d at 964; People v. Foster, 170 Ill.App.3d 306, 120 Ill.Dec. 651, 654, 524 N.E.2d 681, 684 (1988).
 "`The legislature has determined that only those who drive or are in actual control of a vehicle "upon the public *Page 1276 
highways" of the State shall be deemed to have consented to chemical testing. . . .
 "`We do not consider, as suggested by the State in its brief, that our holding would necessarily exempt all drivers who may be finally stopped and arrested on private property from the requirements of the implied consent statute. Where there is evidence that a person drove or was in control of a vehicle upon a public highway while under the influence of alcohol or other drug, as required by the statute, he will be deemed to have consented to testing under the statute whether actually arrested on the highway or on private property.' Kissel, 150 Ill.App.3d at 286-87, 103 Ill.Dec. at 648, 501 N.E.2d at 965.
 "The implied consent statute is applicable where the arresting officer has probable cause to believe that the defendant had been driving on a highway even though he did not actually see the defendant drive on the highway. People v. Wingren, 167 Ill.App.3d 313, 118 Ill.Dec. 62, 68, 521 N.E.2d 130, 136 (1988).
 "Ex parte Love, 513 So.2d 24 (Ala. 1987), stands for the principle that a blood sample taken before a motorist's arrest and without his express consent is inadmissible under the express terms of the implied consent statute. `[T]he requirement of a lawful arrest in the Alabama "implied consent" statute grants to the motorist in question a procedural right, and . . . the failure to accord that right renders the blood sample illegal for the purpose of its admission as evidence against the motorist who objects to its admission.' Love, 513 So.2d at 30. The court found that `the Alabama statute gives a procedural protection beyond that apparently mandated by federal decisions.' Love, 513 So.2d at 30.
 "However, here, the implied consent law does not apply because the defendant was arrested for DUI on private property and there was no evidence that he had been driving on a highway. `Note that it is the act of operating a vehicle on the public highways that brings the statute into operation.' `Interpretation of Implied Consent Laws by the Courts,' Traffic Institute, Northwestern University, at 21 (1972). The implied consent statute has been limited in its application by the legislature to persons who operate a motor vehicle upon the public highways of this state. § 32-5-192(a). Consequently, the procedural protections afforded by the Alabama implied consent statute do not apply to a motorist arrested for DUI on private property and, in such a case, the taking of a breath sample can be justified on the basis of voluntary consent. Cf. Ex parte Love, 513 So.2d at 29 (`[I]n the absence of our statute's limiting language, we could justify the taking of the blood sample on the basis of a lawful arrest without a warrant, the basis of a lawful arrest with a warrant, or the basis of voluntary consent or other waiver.')."
555 So.2d at 248-49 (footnote omitted).
Additionally, in Barnett v. State, supra, when the police officer arrived at the scene, Barnett was sitting on private property with, and his car engine was not running; the police officer noted that the hood of the car was still warm. The police officer did not actually see the appellant driving his car on public streets. The Court noted that "this court did not hold inLunceford that merely being arrested on private property exempts DUI offenders from the implied consent statutes." 671 So.2d at 138. The Court held that the trial court did not err in admitting the results of Barnett's breathalyzer test: *Page 1277 
 "Here, [the officer] had received reports that the appellant was driving in the area and that he was intoxicated. [The officer] knew the appellant, knew where he lived, and knew what kind of car he drove. He then received a dispatch that the appellant was at [the appellant's grandson]'s house causing a disturbance. This information and [the officer]'s personal knowledge supplied him with probable cause to believe that the appellant had been driving on a public highway."
671 So.2d at 138.-39.
In this case, Officer Ray Clifton Billingsley testified that, on December 1, 2002, he received a call that there was "a male subject in a vehicle, apparently asleep behind the wheel at a convenience store" in Florence, Alabama. (R. 9.) Officer Billingsley testified that when he arrived at the store, Brown was behind the wheel of his car, and the engine was running. The officer also testified that there was no way to enter the parking lot of the convenience store "without getting on the street." (R. 10.) Officer Billingsley testified that Brown told him that he was "on his way back from . . . a female's house across the river" in Sheffield, Alabama. (R. 11.) Brown told the officer that he had been in the parking lot for approximately an hour. When asked if he had drunk any alcohol, Brown responded that "he [had] had a few earlier." (R. 16.)
After Brown was placed under arrest, a blood alcohol test was performed. The test results — .16 — were twice the legal limit.
Applying the rationale of Lunceford and Barnett to the case at hand, we find that this case is more similar in facts toBarnett. There was sufficient evidence indicating that Brown had been driving on a public road just before his arrest and blood test. Although Brown, like Lunceford, was sitting in a parked car in a private parking lot when he was arrested, the engine in Brown's car was running. Additionally, also unlike the evidence presented by the State in Lunceford, there was evidence indicating that the parking lot was accessible only from public streets. Finally, Brown admitted that he had come to the parking lot where he was arrested from his girlfriend's house in another city, from which one could logically infer that Brown had driven on public roads from his girlfriend's house to the private parking lot.
Because there was sufficient evidence indicating that Brown had been driving on public highways just before his arrest, he gave his consent to have a blood sample taken, pursuant to the implied consent statute, and his argument on appeal is without merit.
For the above-stated reasons, the judgment of the trial court is affirmed.
AFFIRMED.
McMILLAN, P.J., and BASCHAB, SHAW, and WISE, JJ., concur.
 *Page 299